Hamill v. Talbott.

PETER HAMILL, Appellant, v. JOHN A TALBOTT, Respondent.

Kansas City Court of Appeals, October 30, 1899.

1. **Divorce**: JURISDICTION: PERSONAL JUDGMENT: SERVICE. A court may have jurisdiction over the status of a party to a marriage and proceed to annul such status, but it can not fix the collateral rights of property of the absent party unless he has been served with process within the jurisdiction.

2. ———: ALIMONY: PERSONAL JUDGMENT: CONSTRUCTIVE SERVICE: OHIO STATUTE. A judgment for alimony is *in personam* and jurisdiction can only be acquired by service within the state or appearance, and the Ohio statute permitting service by leaving a copy at the defendant's usual place of residence, is constructive service only unless defendant is a citizen of Ohio.

3. ———: DEFINITIONS: RESIDENT AND RESIDENCE. In divorce statutes the terms resident and residence are equivalent in meaning to those of citizen and domicile. The meaning in attachment and limitation statutes distinguished.

4. ———: KNOWLEDGE OF INVALID DECREE: ESTOPPEL. Although a decree granting the wife a divorce with alimony be invalid as to such alimony, yet if the husband with full knowledge thereof accepts the same, declares himself single and unmarried, conveys his property on that theory and marries again, he will be estopped to deny his liability for alimony under the judgment, as he can not enjoy the benefits and escape the burdens of the judgment.

5. ———: ———: ———: ASSIGNOR, ELLISON, J., concurring. The plaintiff stands in the shoes of the Ohio wife, his assignor, and the case is considered as though she were the plaintiff, and still he is estopped, since he accepted the judgment in full and asserted and exercised his rights thereunder; and this, notwithstanding the doctrine that a divorce can not be established by estoppel, as the questions here are property rights solely.

Appeal from the Nodaway Circuit Court.—*Hon. S. R. Beech*, Special Judge.

REVERSED AND REMANDED.

Hamill v. Talbott.

*William C. Ellison* for appellant.

(1) What is the meaning of the words, "usual place of residence?" Harrison v. Farmington, 35 N. J. Eq. 4; Lee v. Macfee, 45 Minn. 33; Dunkle v. Elston, 71 Ind. 585; Lucas v. Wilson, 67 Ga. 356; Giles v. Hicks, 45 Ark. 271; Huntley v. Baker, 33 Hun. 578. As before stated, the word resident as used here, has the same meaning as when used in statutes relating to attachments. See 1 Shinn on Attch., secs. 90, 91 *et seq.* (2) Is the defendant estopped from denying the validity of the judgment? But it is careless, loose thought that applies that doctrine to the facts of this case. It has never been decided that a court has jurisdiction to decree a divorce when there has been no valid service by publication or otherwise. Such an act would be a nullity and would be so treated everywhere, and either party might be prosecuted for bigamy, if he or she should marry again after such a decree. Can he thus reap all the advantages but avoid all the burdens of the proceeding? We are not without authority on this question. Marvin v. Foster, 61 Minn. 154; 63 N. W. Rep. 484; Arthur v. Israel, 15 Colo. 147; 22 Am. St. Rep. 381; Mohler v. Shanks' Est. 93 Ia. 273; 61 N. W. Rep. 981; Richeson v. Simmons, 47 Mo. 20; 1 Herman on Estoppel, sec. 285; 2 Herman on Estoppel [1 Ed.], sec. 1050.

*Growney & Growney* and *J. B. Newman* for respondent.

(1) Respondent being an infant until December 27, 1891, and his domicile of origin being in Missouri, under the admitted facts in this case, he never acquired a residence or domicile or citizenship in Ohio. Lamar v. Micou, 112 U. S. 452; s. c., 114 U. S. 218. (2) The judgment in the Ohio court may be valid as to the divorce while void as to the alimony. Ellison v. Martin, 53 Mo. 575; 2 Black on Judg., sec. 933. (3) The defendant in the case being notified by constructive or substituted service of process, would only be

bound (questionably) when a citizen of the state at the time owing allegiance thereto and submission to its laws. Huntley v. Baker, 33 Hun. 378; Beard v. Beard, 21 Ind. 321; Hamill v. Talbott, 72 Mo. App. 22. (4) The question of fact, viz., the citizenship of respondent having been submitted to a jury in the trial court on proper declarations of law, their finding will not be disturbed on appeal. Doering v. Saum, 56 Mo. 479; Henry v. Railway, 109 Mo. 488, 492. (5) The question of domicile, resident, inhabitant and citizen is fully discussed, and the extent to which the intent governs is decided in the case *supra*, State ex rel. v. Banta, 71 Mo. App. 32. (6) No man can set up another's act or conduct as the ground of an estoppel, unless he shows he was deceived or misled thereby. Amy v. Ramsey, 4 Mo. 505; Bales v. Perry, 51 Mo. 449; State ex rel. v. Sitlington, 51 Mo. App. 252; Reichla v. Gruensfelder, 52 Mo. App. 43.

SMITH, P. J.—This is an action on a judgment rendered by an Ohio court. The cause was here by an appeal on another occasion, as may be seen by reference to 72 Mo. App. 22. Most of the facts necessary for a full understanding of the questions raised by the present appeal can be gleaned from the opinion there reported. The record recites jurisdiction by due service of process, and the sheriff's return, indorsed on the back of the writ of summons, is as follows: "Received 2 o'clock p. m. on 24th day of November, 1891, and on 27th day of November, A. D. 1891, I served the same, by leaving a true copy thereof, together with a copy of the petition at the usual place of residence of the within named defendant, John A. Talbott.—Wm. M. Neville, Sheriff, by Oscar N. Armstrong, deputy."

The statute of Ohio, in force at the time of the service of the writ of summons in the case, provided: "When the defendant is a resident of this state, the clerk shall issue a summons, directed to the sheriff of the county, in which he or she (the defendant) resides, or is found, which, together

with a copy of the petition, shall be served on the defendant, at least six weeks before the hearing of the cause.

"The service shall be by delivering at any time before the return day, a copy of the summons, with indorsements thereon, to the defendant personally, or by leaving a copy at his usual place of residence   *   *   *   and the return must be made at the time mentioned in the writ, and the time and manner of service shall be stated on the writ." Revised Statutes of Ohio, 1880, secs. 5042, 5692. It is conceded that in cases where the service of summons was made in conformity to the foregoing statutory provisions, the common pleas court, in which the judgment in question was rendered, had jurisdiction to render such judgment.

The questions here presented arise out of the action of the court below in the giving and refusing of instructions. It stands admitted before us that if the instructions given for the defendant and refused for plaintiff asserted correct rules of law as applicable to the case, there was sufficient evidence adduced to justify the giving of them. Those given for the defendant told the jury:

1. "If the jury believe from the evidence that the defendant never, at any time, made or intended to make his home or domicile in the state of Ohio, they will find for the defendant, without regard to when he may have left Ohio, or when he may have been in that state.

2. "The jury are instructed that before they can find for plaintiff, they must believe from the evidence that at the time of the alleged service on November 27, 1891, the defendant was a citizen of the state of Ohio, and at that time he so considered himself.

3. "The court instructs the jury that the manner of service of process on defendant in the transcript of the judgment roll from the Ohio court, offered in evidence, would only bind a citizen of that state domiciled or residing therein, claiming said state as their home at the time, and you are

instructed that unless you believe from the evidence that defendant Talbott was at that date a citizen of said state of Ohio, as above described at the time the Ohio court would have acquired no jurisdiction of his person in said suit to render any personal or money judgment against him in said cause that would be valid in this state, and your finding should be for defendant."

It is in effect conceded that a suit for divorce is one both *in rem* and *in personam,* and if the court by reason of the non-residence has no jurisdiction over one of the parties, but has jurisdiction over the status of the other party, it can proceed to annul such status, this being a matter *in rem.* But it can not fix the collateral rights of property of the absent party unless he has been served with process within the jurisdiction. The jurisdiction *in rem* is sufficient to undo the *vinculum* of the marriage, or, in other words, to dissolve the marriage status. But to charge a husband with alimony there must be jurisdiction *in personam.*

Constructive service in conformity with the local statute will confer jurisdiction so far as the suit is *in rem.* But if the suit is also for alimony, it to that extent is one *in personam* and jurisdiction can only be acquired by service on the person within the state or by appearance. Bishop on Mar. & Divorce, secs. 27, 35, 36 and 37. The Ohio statute, as has been seen, provides that when a defendant is a "resident" of the state he can be served with summons either by delivering him personally a copy thereof, "or by leaving a copy at his usual place of residence;" and the decisive question now is, whether or not the court erred by instructing the jury, at the request of the defendant, that service of the summons made in the latter manner was invalid unless they believed from the evidence that he (defendant) was at the time of such service a citizen of the said state, domiciled or residing therein. Such service is constructive and will not authorize

a judgment *in personam*, except where the defendant resides within the territorial limits of the court issuing the writ.

In Huntley v. Baker, 33 Hun. 378, it is said that: "The courts of any state or country can have no territorial jurisdiction so as to give notice, serve process, or charge persons or property beyond their respective boundaries. And when thus unable to acquire jurisdiction of the person against whom the legal proceedings are by statute authorized and nominally taken without actual service on him, the proceedings can be treated as *in rem* only in respect to the property within the jurisdiction. But it has been repeatedly held in England that this doctrine when the person so sought to be charged by judgment is a subject or a citizen of the country where and at the time the proceedings are taken and where they are in conformity to the statute there, although the person be then absent from the country and that is put upon the ground that the person domiciled there owes allegiance to the country and submission to its laws   *   *   *.  And therefore a judgment may, in such case, be rendered against and charge a defendant *in personam* without any personal service upon or actual notice to him and in his absence from the country." This doctrine was quoted by us with approval in the opinion disposing of the case on the formal appeal. If the state of Ohio was the domicile of the defendant at the time the constructive service of the summons was made then such service was sufficient to confer upon the court the requisite jurisdiction to render judgment *in personam*, even though the defendant was absent from the state and never had any actual notice of the commencement of the proceeding.

The statutory terms "resident or residence" as used in divorce statutes contemplate, as we think, an actual residence with substantially the same attributes as are intended when the term "domicile" is used. They do not mean the place where the defendant in fact resides for the time being. They mean a residence of a permanent and fixed character—a

domicile. Bishop on Mar. & Div., sec. 109; Carpenter v. Carpenter, 30 Kan. 712; Whitcomb v. Whitcomb, 46 Iowa, 437; Hinds v. Hinds 1 Iowa, 36; Love v. Cherry, 24 Iowa, 204; Hanson v. Hanson, 111 Mass. 158; Hendricks v. Hendricks, 72 Ala. 132; Kruse v. Kruse, 25 Mo. 68; Pate v. Pate, 6 Mo. App. 49.

It is true that in actions of attachment, and in cases where the statute of limitation is pleaded in bar of the action, it has been held that actual residence, without regard to the domicile, is what is contemplated by those statutes. It was no doubt the intention of the statute to give a remedy by attachment to creditors whose debtors could not be served with process while their domicile continued in the state. Under the attachment statutes, domicile and residence are not convertible terms. And it has been ruled in such cases that absence from one's domicile may be prolonged to such an extent as to justify his being subjected to attachment as a non-resident, but, in such case, there must be a settled, fixed abode—an intention to remain permanently, at least for a time on business or for other purposes to constitute a "residence" within the meaning of that term. Mere absence from the state temporarily on business or pleasure is not within the meaning of the statute relating to attachments.

But though the creditor is personally absent from the state for an indefinite time, yet his property is not subject to attachment if he leaves his family at his residence so that the ordinary process of the law may be served on him there in the manner provided by the statute in such cases. Adams v. Abernathy, 37 Mo. 196; Chariton Co. v. Moberly, 59 Mo. 238; Venuci v. Cademartori, 59 Mo. 352; Alton v. Newcomer, 42 Miss. 186; Briggs v. Rochester, 16 Gray, 337; Savage v. Scott, 45 Iowa, 120; Robertson v. Cease, 97 U. S. 646.

In divorce statutes we think the terms "resident" or "residence" are equivalent in meaning to that of "citizen" or

"domicile." It follows, therefore, that in an action for divorce constructive service of the kind shown to have been had in this case will not authorize a judgment for alimony, unless at the time of the commencement of the suit the domicile of the defendant was within the jurisdiction of the court rendering the judgment. Primarily there is some dissimilarity in the signification of the terms, "resident" and "citizen," but in the sense in which they are used in the defendant's instructions there can be none. There is no such difference as could confuse or mislead the jury. It seems to us that the theory of the instructions given for defendant and to which the plaintiff objects were substantially correct.

The plaintiff further complains that the court erred in refusing to give an instruction requested by him to the effect that "if the defendant received actual knowledge of the fact that his wife had got the decree of divorce and voluntarily treated it as of binding force, and declared himself single and unmarried as a result of such decree, and married again, then he would be estopped from denying the validity of such decree of divorce and judgment for alimony," etc. Even if the decree granting the divorce and alimony was void because of the want of jurisdiction in the court rendering it, yet can the defendant, under the undisputed facts of the case, be heard to controvert its validity? After he had learned that a divorce had been granted and that a personal judgment for alimony had been rendered against him, he not only let the matter rest quietly and without protest for five years, but he, at once, began to act on the theory that the entire proceeding was valid and binding. He made no movement to vacate the decree or to set aside the judgment. He ceased to regard the abandoned woman as his wife; he declared himself single and unmarried, so that he might dispose of his property free from the inchoate right of dower; he treated himself as having been by the decree, freed from the obligation to maintain his wife; he married another woman, and up

to that time, conducted himself and held himself out to the world as a single man. All of this was in affirmance of the validity of the decree, which he must have known to have been obtained on the theory that he had been personally served with process. Can he thus reap all the advantages but avoid all the burdens of the proceeding?

No case has been found where it has been decided that a court has jurisdiction to decree a divorce when there has been no notice to the defendant by either the personal service of process or by publication. A judgment without such notice would, of course, be a nullity. Bishop on Mar. & Div., secs. 77, 142, 184, 552; Freeman on Judgments, sec. 580. The record in the present case shows that the defendant voluntarily accepted the privileges, benefits and fruits of the void decree, and it seems to us that under such circumstances he ought to be estopped to dispute that part of the decree awarding alimony to his wife. It is a well recognized principle that where a party receives the benefits of a judgment or decree, he can not escape the burden which it imposes. Herman on Estoppel, sec. 285. It is needless to say that parties can not be divorced by estoppel. A void decree of divorce can not be validated by the acts of the parties thereto, except so far as either one is estopped by his or her own wrongful conduct in enjoying the benefits, fruits and privileges. A defendant who, knowing a void decree of divorce has been rendered against him, acquiesces in it, as here, for many years, treats it as valid, permanently renounces his obligations and re-marries, can not be permitted to take advantage of his own wrong. Richeson v. Simmons, 47 Mo. 20; Herman on Estoppel and Res Adj., sec. 285; Marvin v. Foster, 61 Minn. 154; Arthur v. Israel, 15 Colo. 147; Mohler v. Shanks' Estate, 93 Iowa, 273. We think upon both principle and authority we are justified in concluding that since the defendant has received the benefits of the decree he ought not to be permitted to escape the burden which

it imposes, as to the payment of alimony. Accordingly, we think the court erred in refusing to submit the case to the jury on the theory of the plaintiff's refused instruction.

The judgment must therefore be reversed and the cause remanded. All concur.

## SEPARATE CONCURRING OPINION OF ELLISON, J.

The argument of defendant's counsel in support of the motion for rehearing is based altogether on the position of the plaintiff to the question of estoppel as though he was a stranger. In fact, he stands in the shoes of the Ohio wife, his assignor, and the case should be considered as though she was the plaintiff here. If she could enforce the alimony judgment then plaintiff, as her assignee, can do so. Since if it be said that the judgment is void in the hands of an assignee it destroys property in the hands of an assignor as such assignor would not have a free and untrammeled right of sale to whoever might wish to buy.

Now that this defendant would be estopped to deny the validity of the alimony judgment if this action had been brought by the Ohio wife, the plaintiff therein, there can be no rational doubt. He accepted the judgment in full. He conveyed property as a single man, thus acknowledging that she had no right of dower therein. He married again, thus acknowledging that he was under no obligation to support her. Richardson's Estate, 132 Pa. St. 292; Baily v. Baily, 44 Pa. St. 274; Stephens v. Stephens, 51 Ind. 542; Bourne v. Simpson, 9 B. Monroe, 454; Ellis v. White, 61 Iowa, 644.

The divorce was granted for his fault and she was given alimony as recompense for her surrender of rights in the property and of the right to be maintained by him. She could not now assert rights in his property, nor can she demand that he support her. He accepts of this situation and yet attempts to avoid the very thing that created such situation.

The claim of defendant that the estoppel established by the authorities only applies to property rights may well be conceded. It may be freely admitted that a divorce *per se* can not be established by estoppel. But this judgment for alimony is a property right. It is as much so as a bond, note, horse or land. I concur in the conclusion reached by Judge *Smith.*