[Civil No. 4532.   Filed June 12, 1944.]

[149 Pac. (2d)  683.]

BETH SMITH, Appellant, v. SAM R. SMITH, Appellee.

Mr. W. H. Chester, for Appellant.

Messrs. Ewing & Franks, for Appellee.

ROSS, J.—The parties hereto were married December 24, 1928, in Phoenix, Arizona.  They have two children the issue of said marriage, Andrew, aged six, and Sammy Joyce, aged five.  The action is for divorce and custody of the children by the husband Sam R. Smith, and was commenced June 21, 1941, in the superior court of Yavapai County, alleging as grounds therefor that the defendant has been guilty

of excesses and cruel treatment towards the plaintiff in this, that the wife and mother Beth Smith in 1934 became affiliated with an organization known as Jehovah's Witnesses, a sect of religious fanatics whose methods of propagating their beliefs are so aggressive, obnoxious and obtrusive as to arouse resentment and physical violence on the part of the public. He further alleges defendant refused to live with him at their home in Mayer, Arizona, where he was engaged in mining, claiming her religious work demanded that she reside in the city of Prescott, where she was engaged in spending her time calling on the public and distributing Witnesses' literature, to the great annoyance of plaintiff's friends and acquaintances who requested plaintiff to keep her away from them, to his extreme embarrassment and grievous mental suffering; that in aid of her religious activities she used the two minor children to distribute literature and exposed them to probable physical violence; that she has not properly fed nor cared for the children, and will not permit them to salute the American flag. Plaintiff alleges he has arranged for a proper home for the children and for their education.

The defendant moved that all of the allegations in plaintiff's complaint concerning her religious attitude be stricken as improper and as no ground for divorce. The motions were denied, whereupon she filed an answer, charging plaintiff with cruelty towards her in "that he has constantly cursed and abused this defendant and cross-complainant and has threatened her with bodily injury." She further charges plaintiff with habitual intemperance and as not a fit person to have the care of the children. She alleges that he is an able-bodied man, earning approximately the sum of $300 per month. She asks for a divorce, the custody of the children, support money and attorney's fees.

On the issues thus formed the court took the testimony of witnesses, and having duly considered the evidence, rendered its judgment granting the divorce as prayed for, and awarding to the plaintiff the custody of the two minor children. It is from this judgment and the whole thereof that the defendant wife has appealed.

One of the statutory grounds for divorce is:

"(5) Where the husband or wife is guilty of excesses, cruel treatment or outrages toward the other, whether by the use of personal violence. or other means." Section 27–802, Arizona Code Annotated 1939.

We observe that both parties ask to be given their freedom from the other. That may not be done except upon a ground provided by the statute. They both charge cruelty, and we have no doubt the conduct of the defendant, as found by the court, constituted cruel treatment of and outrages towards the plaintiff. These parties after their marriage and until the wife became a Witness had gotten along fairly well. They were apparently cooperative and reasonably satisfied with each other and their lot in life. He was a hard working laboring man, and she a true and sympathetic helpmate doing her part in their homemaking. The fatal rift between them came when she embraced line, hook and sinker the teachings of Jehovah's Witnesses and began going from place to place, sometimes taking with her their children, looking for proselytes to her newly embraced form of worship. She not only preached and proclaimed her ideas to the local people, but made trips in a kind of Gypsy fashion, taking the children to St. Louis, Missouri, and to Los Angeles, California, and to other points to attend meetings of Jehovah's Witnesses, on such trips depending upon charity for food, shelter and clothing.

" . . . 'It was formerly thought that to constitute extreme cruelty, such as would authorize the granting of a divorce, physical violence is necessary; but the modern and better considered cases have repudiated this doctrine as taking too low and sensual a view of the marriage relation, and it is now very generally held that any unjustifiable conduct on the part of either the husband or wife which so grievously wounds the feelings of the other or so utterly destroys the peace of mind of the other as to seriously impair the health, . . . or such as utterly destroys the legitimate ends and objects of matrimony, constitutes extreme cruelty under the statute.' *Carpenter* v. *Carpenter,* 30 Kan. [712], 744, 2 Pac. 122 [46 Am. Rep. 108]. . . . " *Barnes* v. *Barnes,* 95 Cal. 171, 30 Pac. 298, 299, 16 L. R. A. 660.

It is all right for each to have his or her own notions and religious beliefs (17 Am. Jur. page 179, sec. 57), but if one carries such beliefs to the extent of disrupting and destroying the family life, it seems his conduct becomes cruel treatment and outrages towards his or her mate. Upon this point the findings of the trial court were against the wife, and it was its province to weigh the evidence.

Upon a somewhat analogous state of facts, in *Wilson* v. *Wilson,* 58 Cal. App. 2d 641, 137 Pac. (2d) 700, 702, the court said:

"It is apparent from the testimony that the trial court was justified in believing that the conduct of the plaintiff was such as to cause and that it did actually cause great and grievous mental suffering on the part of the defendant. The defendant has had the care and custody of the children for more than a period of one year and apparently the plaintiff has chosen the work of furthering the interest of Jehovah's Witnesses in preference to her family. The trial court had before it the parties involved and was able to judge of their appearance. It was in a much better position to judge of the welfare of the children than is the appellate court. It is settled law in this state

that the findings of the trial court on this question will not be disturbed on appeal unless the evidence in support thereof is so slight as to indicate a want of the ordinary good judgment and an abuse of discretion by the trial court. (Citing cases.) Whether in any given case there has been inflicted 'grievous mental suffering' is a question of fact to be deduced from all the circumstances of each particular case. A correct decision must depend upon the sound discretion and judgment of juries and courts. (Citing cases.) The evidence supports the findings and the findings support the judgment.''

The judgment of the lower court is affirmed, except it should be amended to provide for the right of the mother to visit the children from time to time.

McALISTER C. J., and STANFORD, J., concur.